**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **PAMELA R. LAY, BRIAN DUCOTE,** | § | |
| **RYAN JETER, ALYSSA JAYNES,** | § | |
| **MARCUS DEVANE, AND SIMON SUAREZ,** | § | |
| **ON BEHALF OF THEMSELVES AND ALL,** | § | |
| **OTHERS SIMILARLY SITUATED,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **Civ. No. 5:12-cv-00754-DAE** |
| **V.** | § | |
| | § | **JURY DEMANDED** |
| **SPECTRUM CLUBS, INC.,** | § | |
| **GOLD'S GYM INTERNATIONAL, INC.;** | § | |
| **GOLD'S TEXAS HOLDINGS GROUP,   INC.,** | § | |
| **GBG, INC.; GOLD'S ALAMBAMA, LLC;** | § | |
| **GOLD'S GYM ROCKIES, LLC; GOLD'S** | § | |
| **HOLDINGS CORP.; GOLD'S OKLAHOMA,** | § | |
| **LLC; GOLD'S ST. LOUIS, LLC;** | § | |
| | § | |
| *Defendants.* | § | |

**FITNESS CONSULTANT PLAINTIFFS' PARTIALLY OPPOSED/PARTIALLY
UNOPPOSED MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION
AND TO ISSUE NOTICE**

/s/ Lawrence Morales II_____
Lawrence Morales II
State Bar No. 24051077
**THE MORALES FIRM, P.C.**
115 E. Travis, Suite 1530
San Antonio, Texas 78205
Telephone No. (210) 225-0811
Facsimile No. (210) 225-0821
lawrence@themoralesfirm.com

***ATTORNEY FOR PLAINTIFFS***

TABLE OF CONTENTS

I.  SUMMARY…………………………………………………..…………1

II.  FACTUAL AND PROCEDURAL BACKGROUND……………………...……...2

    a.  Gold's Gym Pays Its Fitness Consultants Pursuant to the Same Nationwide Compensation Plan…………………………………………………………2

    b.  Until Recently, Gold's Gym Had A Nationwide Policy of Excluding Commissions and Bonuses From Fitness Consultants' Overtime Pay………...3

    c.  Gold's Gym Has a De Facto Policy of Encouraging and Allowing Fitness Consultants to Work Off-The-Clock…………………………………………..4

    d.  Fitness Consultants' Sue Gold's Gym for Overtime Violations………………5

III.  ARGUMENT AND ANALYSIS…………………………………………………6

    A.  FLSA Collective Actions Are Certified Under a Lenient Standard……….8

    B.  Plaintiffs More Than Satisfy The Lenient Standard for Conditional Certification Of A FLSA Collective Action………………………………13

        1.  First, There Is  A Reasonable Basis For Crediting The Assertion That Aggrieved Individuals Exist…………………………………13

        2.  Second, Those Other Aggrieved Individuals Are Similarly Situated to the Plaintiffs In Relevant Respects Given the Claims And Defenses Asserted…………………………………………………14

        3.  Third, There Is Sufficient Evidence That Those Other Aggrieved Individuals Are Interested In Opting In To This Lawsuit…………16

    C.  The Proposed Notice Is Proper…………………………………………17

IV.  CONCLUSION…………………………………………………………...17

<u>LIST OF EXHIBITS</u>

| <u>Exhibit</u> | | <u>Description</u> |
|---|---|---|
| 1 | | Proposed Notice to Putative Class Members |
| 2 | | Proposed Opt-In Form |
| 3 | | Gold's Corporate Rep. Depo. Excerpts |
| 4 | | Rocco Greco Depo. Excerpts |
| 5 (Filed Under Seal) | | Fitness Consultant Job Description |
| 6 | | <u>Plaintiff and Opt-In Declarations</u> |
| | 6.1 | Devin Doty |
| | 6.2 | Brian Ducote |
| | 6.3 | Marc Guzman |
| | 6.4 | Phil Hallberg |
| | 6.5 | Mark Hyatt |
| | 6.6 | Pamela Lay |
| | 6.7 | Raul Vela |
| | 6.8 | Kari Perry |
| | 6.9 | Marcus Devane |
| | 6.10 | Ryan Jeter |
| 7 | | Declaration of Adrian Richardson |
| 8 (Filed Under Seal) | | Gold's Gym International, Inc. Employment Offer Letter |
| 9 | | Gold's Gym International, Inc. Employment Introduction Letter |
| 10 (Filed Under Seal) | | Gold's Gym International, Inc. Deposit Enrollment Form |
| 11 (Filed Under Seal) | | Gold's Gym International, Inc. Employment Welcome Letter (Bates 145-46) |
| 12 (Filed Under Seal) | | Gold's Gym Employee Handbook Excerpts |
| 13 | | Luke Rood Disciplinary Memo for Working Overtime |

<u>TABLE OF AUTHORITIES</u>

**CASES**

*Acevedo v. Allsup's Convenience Stores Inc.*,
    600 F.3d 516 (5th Cir. 2010)……………………………………………………..9

*Aguilar v. Complete Landsculpture, Inc.*,
    No. 3:04-CV-0776-D, 2004 WL 2293842 (N.D. Tex. Oct. 7, 2004)………………10

*Barrus v. Dick's Sporting Goods, Inc.*,
    No. 05-CV-6253, 2006 WL 3373110037 FV (W.D.N.Y. Nov. 3, 2006)…………..12

*Beall v. Tyler Techs., Inc.*,
    No. Civ. A 2:08-cv-422, 2009 WL 1766141 (E.D. Tex. Jun 23, 2009)……………18

*Bouaphakeo v. Tyson Foods, Inc.*,
    564 F. Supp. 2d 870 (N.D. Iowa 2008)………………………………………………12

*Brasfield v. Source Broadband Servs., LLC*,
    257 F.R.D. 641 (W.D. Tenn. 2009)…………………………………………………..6

*Cantu v. Vitol, Inc.*,
    Civil Action No. H-09-0576, 2009 WL 5195918 (S.D. Tex. Dec. 21, 2009)………11

*Clark v. City of Fort Worth*,
    No. 4:10-CV-519-A, 2011 WL 121896 (N.D. Tex. Jan. 11, 2011)…………………10

*Clarke v. Convergys Customer Mgmt. Group, Inc.*,
    370 F. Supp. 2d 601 (S.D. Tex. 2005)…………………………………………………6

*Donovan v. Grantham*,
    690 F.2d 453, 457 (5th Cir. 1982)……………………………………………………..7

*Donovan v. Univ. of Tex. at El Paso*,
    643 F.2d 1201 (5th Cir. 1981)………………………………………………………10

*Dryer v. Baker Hughes Oilfield Operations, Inc.*,
    Civil Action No. H-08-1212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008)………16

*Eggelston v. Sawyer Sportsbar, Inc.*,
    Civil Action No. 4:09-3529, 2010 WL 2639897 (S.D. Tex. June 28, 2013)……….18

*England v. New Century Fin. Corp.*,
    370 F. Supp. 2d 504 (M.D. La. 2005)………………………………………………...15

*Falcon v. Starbucks Corp.*,
     580 F. Supp. 2d 528 (S.D. Tex. 2008)……………………………………………6

*Grayson v. K-Mart Corp.*,
     79 F.3d 1086 (11th Cir. 1996)……………………………………………...11

*Haynes v. The Singer Co., Inc.*,
     TCA 79-0892, 1981 WL 2344 (N.D. Fla. June 19, 1981)…………………………...8

*Hoffmann v. Sbarro, Inc.*,
     982 F. Supp. 249, 262 (S.D.N.Y. 1997)……………………………………………13

*Hoffman-La Roche Inc. v. Sperling*,
     493 U.S. 165, 170 (1989)……………………………………………………..8, 9

*Johnson v. Big Lots Stores, Inc.*,
     Civil Action Nos. 04-3201, 05-6627, 2007 WL 5200224 (E.D. La. Aug. 21, 2007)..16

*Johnson v. TGF Precision Haircutters, Inc.*,
     319 F. Supp. 2d 753 (S.D. Tex. 2004)………………………………………………16

*Kaiser v. At The Beach, Inc.*,
     No. 08-CV-586-TCK-FHM, 2010 WL 5114729 (N.D. Okla. Dec. 9, 2010)……….7

*LaChapelle v. Owens-Illinois, Inc.*,
     513 F.2d 286 (5th Cir. 1975)………………………………………………..10

*Lusardi v. Xerox Corp.*,
     118 F.R.D. 351 (D.N.J. 1987)………………………………………..9, 10, 12

*Lynch v. United Servcs. Auto. Ass'n*,
     491 F. Supp. 2d 357 (S.D.N.Y. 2007)………………………………………………12

*Mahoney v. Farmers Ins. Exch.*,
     No. 4:09-cv-2327, 2011 WL 4458513 (S.D. Tex. Sep. 23, 2011)………………11, 13

*Marshall v. EyeMasters of Texas, LTD.*,
     272 F.R.D. 447 (N.D. Tex. 2011)………………………………………………9

*Maynor v. Dow Chem. Co.*,
     Civil Action No. G-07-0504, 2008 WL 2220394 (S.D. Tex. May 28, 2008)……….10

*McKnight v. D Houston, Inc.*, 756 F. Supp. 2d 794 (S.D. Tex. 2010)……………...12, 15, 16

*Mooney v. Aramco Servs. Co.*,
     54 F.3d 1207 (5th Cir. 1995)…………………………………………………..*passim*

*Morales v. Than Hung Corp.*,
    Civil Action No. 4:08-2795, 2009 WL 2524601 (S.D. Tex. Aug. 14, 2009)..11, 13, 14

*Newton v. City of Henderson*,
    47 F.3d 746 (5th Cir. 1995)…………………………………………………...6

*Power v. Centennial Communications Corp.*,
    679 F. Supp. 2d 918 (N.D. Ind. 2009)……………………………………………..8

*Prater v. Commerce Equities Mgmt. Co.*,
    No. H-07-2349, 2007 WL 4146714 (S.D. Tex. Nov. 19, 2007)……………..11, 14, 16

*Roussel v. Brinker Intern., Inc.*,
    No. H-05-3733, 2008 WL 2714079 (S.D. Tex. July 9, 2008)………………………..8

*Ryan v. Staff Care, Inc.*,
    497 F. Supp. 2d 820 (N.D. Tex. 2007)…………………………………………*passim*

*Sandoz v. Cingular Wireless LLC*,
    553 F.3d 913 (5th Cir. 2008)…………………………………………………..10

*Shusan v. Univ. of Colorado*,
    132 F.R.D. 263 (D. Colo. 1990)………………………………………………..9

*Simmons v. T-Mobile USA, Inc.*,
    No. H-06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007)………………………11

*Solis v. Tally Young Cosmetics, LLC*,
    No. 09-CV-4804, 2011 WL 1240341 (E.D.N.Y. Mar. 4, 2011)……………………..7

*Songer v. Dillon Resources, Inc.*,
    569 F. Supp. 2d 703 (N.D. Tex. 2008)…………………………………….……..11

*Young v. Cooper Cameron Corp.*,
    229 F.R.D. 50 (S.D.N.Y. 2005)…………………………………….……13

*Vaszlavik v. Storage Tech. Corp.*,
    175 F.R.D. 672 (D. Colo. 1997)……………………………………………13

*Villatoro v. Kim Son Rest., L.P.*,
    286 F. Supp. 2d 807 (S.D. Tex. 2003)…………………………………………*passim*

STATUTES

29 U.S.C. § 207……………………………………………………………...7, 8, 14

29 U.S.C. § 216.....................................................................................9, 10, 12

REGULATIONS

29 C.F.R. § 778.117…………………………………………………………7, 8

29 C.F.R. § 778.209…………………………………………………………4

29 C.F.R. § 785.13…………………………………………………………...6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **PAMELA R. LAY, BRIAN DUCOTE,** | § | |
| **RYAN JETER, ALYSSA JAYNES,** | § | |
| **MARCUS DEVANE, AND SIMON SUAREZ,** | § | |
| **ON BEHALF OF THEMSELVES AND ALL,** | § | |
| **OTHERS SIMILARLY SITUATED,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **Civ. No. 5:12-cv-00754-DAE** |
| **V.** | § | |
| | § | **JURY DEMANDED** |
| **SPECTRUM CLUBS, INC.,** | § | |
| **GOLD'S GYM INTERNATIONAL, INC.;** | § | |
| **GOLD'S TEXAS HOLDINGS GROUP,   INC.,** | § | |
| **GBG, INC.; GOLD'S ALAMBAMA, LLC;** | § | |
| **GOLD'S GYM ROCKIES, LLC; GOLD'S** | § | |
| **HOLDINGS CORP.; GOLD'S OKLAHOMA,** | § | |
| **LLC; GOLD'S ST. LOUIS, LLC;** | § | |
| | § | |
| *Defendants.* | § | |

**FITNESS CONSULTANT PLAINTIFFS' PARTIALLY OPPOSED/PARTIALLY
UNOPPOSED MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION
AND TO ISSUE NOTICE**

Plaintiffs Pamela R. Lay ("Lay"), Brian Ducote ("Ducote"), Ryan Jeter ("Jeter"), Marcus Devane ("Devane"), Devin Doty ("Doty"), and Kari Perry ("Perry") (collectively, "Plaintiffs") file this Motion to Conditionally Certify a Collective Action and to Issue Notice, and in support thereof, state as follows:

## I.      SUMMARY

Plaintiffs are former Fitness Consultants of Gold Gym, who are pursuing this action for violations of the Fair Labor Standards Act ("FLSA"), on behalf of themselves and all other similarly-situated Fitness Consultants.  Plaintiffs allege that Gold's Gym violated the FLSA by: (1) excluding their commissions and bonuses from their overtime pay (the "Rate Claim"); (2) not

paying them for all hours they worked (the "Off-The-Clock Claim"); and (3) failing to comply with the FLSA's recordkeeping requirements.

Plaintiffs now seek an order from the Court conditionally certifying a collective action under 29 U.S.C. § 216, and authorizing Plaintiffs to issue "opt-in" notices to their similarly-situated Fitness Consultants who work, or have worked, for Gold's Gym during the three years preceding the filing of this action as they are all owed damages based on Gold's Gym's violations of the FLSA.[1]  Accordingly, the sole question presented by this motion is: Should the other Fitness Consultants be given notice and an opportunity to opt-in to this case.  The answer, under the law, is "yes."

Notably, Gold's Gym does <u>not</u> oppose this Motion as it pertains to Plaintiffs' Rate Claim, and thus, agrees that all current and former Fitness Consultants at each of its 85 gyms across the country during the preceding three years should be given notice of this lawsuit and an opportunity to join in.  Therefore, the only *contested* question raised by this motion is: Should the notice that Gold's Gym agrees will be sent to current and former Fitness Consultants, include a notification of Plaintiffs' Off-The-Clock Claim.  Because Plaintiffs easily satisfy the lenient standard for conditionally certifying a collective action, the answer to this question is also "yes."

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Gold's Gym Pays its Fitness Consultants Pursuant to the Same Nationwide Compensation Plan.

Gold's Gym owns and operates eighty-five gyms across the United States.  PL.'S 3RD AM. COMPLAINT, ¶ 13 (DKT. NO. 14); EXHIBIT 3, GOLD'S CORP REP. COPELAND DEP., 25:20-22.  To

---

[1] On March 1, 2013, the Court granted in part and denied in part Gold's Gym's Motion to Consolidate, which consolidated for discovery and all pretrial purposes this action with a second FLSA lawsuit (Cause No. 5:12-cv-00930-DAE) filed by Gold's Gym's Sales Managers.  (DKT. NO. 51).  This Motion to Conditionally Certify a Collective Action and to Issue Notice is filed exclusively on behalf of the Fitness Consultants in Cause No. 5:12-cv-00754-DAE.  The Sales Managers in Cause No. 5:12-cv-00930-DAE will be filing a separate Motion.

help increase sales, Gold's Gym employs Fitness Consultants at each of its gyms, whose primary duties are to sell new memberships and personal training sessions.[2]  EXHIBIT 4, GRECO DEP., 75:25—76:2; EXHIBIT 5, FITNESS CONSULTANT JOB DESCRIPTION (FILED UNDER SEAL).  Gold's Gym's Fitness Consultants: (a) all perform the same principal job duties under the same Job Description; (b) are all subject to the same Gold's Gym Policies and Training Procedures; and (c) are all paid pursuant to the same compensation plan.  EXHIBIT 2, GOLD'S CORPORATE REP. COPELAND DEP., 83:01-07; 84:07-11, 94:17-22, 101:01-22, 179:21—180:7; EXHIBIT 5, FITNESS CONSULTANT JOB DESCRIPTION (FILED UNDER SEAL); EXHIBITS 6.1-6.10, DECLARATIONS FROM PLAINTIFFS AND OPT-INS.

### B.   Until Recently, Gold's Gym Had A Nationwide Policy of Excluding Commissions and Bonuses from Fitness Consultants' Overtime Pay.

Gold's Gym has nationwide compensation policies that apply to its Fitness Consultants across the country.  For example, Gold's Gym has a nationwide policy of designating its Fitness Consultants as "non-exempt" hourly employees, who—according to Gold's Gym's own policies—"are entitled to regular overtime pay or premium pay under specific provisions of

---

[2] Plaintiffs bring this action on behalf of themselves and all Fitness Consultants employed by Gold's Gym during the preceding three years.  Gold's Gym contends that its Fitness Consultants are employed by various regional subsidiaries.  EX. 3, GOLD'S CORP. REP., 43:8-13.  Plaintiffs have named as Defendants eight regional Gold's Gym subsidiaries, which Gold's Gym's counsel has represented are the employers of Fitness Consultants across the country.  However, Plaintiffs allege that parent companies Gold's Gym International, Inc. and Gold's Holdings Corp. are joint employers of Plaintiffs and similarly-situated Fitness Consultants.  DKT. NO. 84, PLAINTIFFS' 3RD AM. COMPLAINT, ¶ 33.  Gold's Gym concedes that Defendant Gold's Holdings Corp. performs all human resource services for its regional subsidiaries, including, *inter alia*, determining the compensation, pay structure, and training for Fitness Consultants.  EX. 3, GOLD'S CORP. REP., 26:17-20, 30:13-15, 31:9-13, 32:17-22, 34:2-35:2, 36:21-37:22, 42:9-15.  Moreover, numerous documents created by Gold's Gym state that Gold's Gym International, Inc. is the actual employer of Fitness Consultants, including the direct deposit form Gold's Gym uses to pay its Fitness Consultants.  *See* EX. 8, GOLD'S GYM INTERNATIONAL, INC. EMPLOYMENT OFFER LETTER; EX. 9, GOLD'S GYM INTERNATIONAL, INC. EMPLOYMENT INTRODUCTION LETTER; EX. 10, GOLD'S GYM INTERNATIONAL, INC. DIRECT DEPOSIT ENROLLMENT FORM; EX. 11, GOLD'S GYM INTERNATIONAL, INC. EMPLOYMENT WELCOME LETTER; EX. 3, GOLD'S CORP REP. COPELAND DEP. 49:18-51:22, 52:4-54:10.  Further, Gold's Gym's Corporate Representative was unable to identify or describe a single document stating that Fitness Consultants are employed by any entity other than Gold's Gym International, Inc.  EX. 2, GOLD'S CORP. REP. Copeland Dep. 54:24-56:1.  Consequently, Plaintiffs request that notice be sent to all Fitness Consultants that have worked for Gold's Gym International, Inc. and/or its subsidiaries during the three years preceding the filing of this action.

federal and state laws."  EXHIBIT 3, GOLD'S CORP REP. DEP., 83:01-07, 84:07-11, 84:12—85:02, 94:17-22; EXHIBIT 5, FITNESS CONSULTANT JOB DESCRIPTION (FILED UNDER SEAL); EXHIBIT 12, GOLD'S GYM EMPLOYEE HANDBOOK EXCERPT (FILED UNDER SEAL).

Further, until recently, Gold's Gym had a nationwide policy of excluding commissions and bonuses from Fitness Consultants' overtime pay.  EXHIBIT 3, GOLD'S CORP REP. COPELAND DEP., 180:19—181:4.  However, in what amounts to a concession that this policy indeed violates the FLSA, Gold's Gym began including commissions into Fitness Consultants' overtime pay in January 2013, five months after Plaintiffs filed this lawsuit.  EXHIBIT 3, GOLD'S CORP REP. COPELAND DEPOSITION, 180:8—181:15; *see also*, *See* 29 C.F.R. § 778.209.  Nevertheless, there is no dispute that Gold's Gym's policy concerning the inclusion or exclusion of commissions and bonuses from overtime pay is uniform to all Fitness Consultants across the country.  EXHIBIT 3, GOLD'S CORP REP. COPELAND DEPOSITION, 180:8—181:15

### C. Gold's Gym Has A *De Facto* Policy of Encouraging and Allowing Fitness Consultants to Work Off-The-Clock.

Numerous Fitness Consultants and Sales Managers have testified by declaration that they were required to work off-the-clock, and that when they complained about it, Gold's Gym did not do anything about it.  EXHIBITS 6.1-6.10, DECLARATIONS OF PLAINTIFFS AND OPT-INS; EXHIBIT 7, DECLARATION OF ADRIAN RICHARDSON.  In addition, numerous Fitness Consultants have testified that Gold's Gym's Managers not only encouraged them to work off-the-clock, but falsified Fitness Consultants' time records to erroneously reduce the number of hours they worked.  EXHIBITS 6.1-6.10, DECLARATIONS OF PLAINTIFFS AND OPT-INS.  Gold's Gym does not contest that some of its Managers falsified Fitness Consultants' time records, and concedes that it

did not take written disciplinary action against these Managers for doing so.  EXHIBIT 4, GRECO DEP, 49:17—50:22, 53:25—54:8, 63:06—64:01.[3]

Importantly, the evidence obtained to date concerning sales associates working off the clock extends beyond San Antonio, and even beyond South Texas.  EXHIBIT 7, DECLARATION OF ADRIAN RICHARDSON.  Adrian Richardson, a former Gold's Gym Sales Manager, has testified by declaration that sales associates in Dallas, Texas (which is the home of Gold's Gym's Corporate Headquarters) routinely work off-the-clock.  EXHIBIT 7, DECLARATION OF ADRIAN RICHARDSON.  According to Mr. Richardson, Gold's Gym's policies and practices require that all sales employees work off-the-clock.  EXHIBIT 7, DECLARATION OF ADRIAN RICHARDSON.  Gold's Gym's Management is well aware that sales associates are working off-the-clock, and refuse to do anything about it.  EXHIBIT 7, DECLARATION OF ADRIAN RICHARDSON.

### D.  Fitness Consultants Sue Gold's Gym For Overtime Violations.

On August 3, 2012, Plaintiffs Lay, Ducote, and Jeter sued Spectrum Clubs, Inc.[4] and Gold's Gym on behalf of themselves and all others similarly situated.  (DKT. NO. 1).  Plaintiffs subsequently filed a First Amended Complaint on August 23, 2012, adding Plaintiffs Jaynes and Devane (DKT. NO. 6), and a Second Amended Complaint on September 25, 2012, adding Plaintiff Suarez (DKT. NO. 14).  Plaintiffs allege that Gold's Gym violated the FLSA by: (1) excluding their commissions and bonuses from their overtime pay, and (2) not paying them for all hours worked.  (DKT. NO. 14).  Lastly, Plaintiffs filed a Third Amended Complaint (DKT.

---

[3] Although Gold's Gym did not write up its Managers for falsely deflating Fitness Consultants' time records, it did discipline a sales associate in writing because he worked too much overtime.  EXHIBIT 14, LUKE ROOD DISCIPLINARY MEMO FOR WORKING OVERTIME.

[4] Defendant Spectrum Clubs, Inc. also owns fitness gyms, and previously employed Plaintiffs in a sales capacity, prior to selling its Texas gyms to Gold's Gym.  (DKT. NO. 1).  Plaintiffs and Spectrum have reached a settlement agreement, resolving all of Plaintiffs' claims against Spectrum.  (DKT. NO. 86).  Consequently, this Motion is limited to Plaintiffs' claims against Gold's Gyms.  However, Plaintiffs reserve the right to amend and/or supplement this Motion if Plaintiffs and Spectrum fail to finalize their settlement agreement and/or the Court denies the parties' Joint Motion to Approve the Settlement Agreement.

No. 84) on May 24, 2013, adding certain subsidiaries of Gold's Gym as Defendants and asserting an additional claim concerning violations of the FLSA's recordkeeping requirements. ***Since Plaintiffs Lay, Ducote, and Jeter first filed this action, twenty-two other individuals have filed Consents to Join, expressly consenting to be a party plaintiff in this lawsuit***. (*See* DKT. NOS. 6, 22, 23, 24, 29, 30, 31, 33, 34, 37, 39, 47, 57, 58, 62, 70, 71, 73, 75, 76, 77).

## III. ARGUMENTS AND AUTHORITIES

In reviewing a Motion for Collective Action Certification, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009). *See also, Eggelston v. Sawyer Sportsbar, Inc.*, Civil Action No. 4:09-3529, 2010 WL 2639897, at *3 (S.D. Tex. June 28, 2013) (stating that court does not consider merits at this stage); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003) (same).

Under the FLSA, an employer must compensate employees for all work it suffers or permits. 29 U.S.C. § 203(g). *See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 533 (S.D. Tex. 2008) (granting conditional certification and allowing notice to be sent to every Assistant Store Manager ("ASM") in each of Starbuck's over 6,500 nationwide stores that employed an ASM); *see also, Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601 (S.D. Tex. 2005) (granting conditional certification of a collective action where "Plaintiffs claim that [Defendants] systematically failed to pay them and other workers at the Houston call center overtime for tasks they performed off-the-clock, in violation of the [FLSA].").  In addition, "it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them.  The mere promulgation of a rule against such work is not enough.

Management has the power to enforce the rule and must make every effort to do so."  29 C.F.R. § 785.13; *see also, Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (stating "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.") (internal citations omitted).

During their employment with Gold's Gym, Plaintiffs were entitled to overtime compensation at a rate of one and one-half times their regular rate of pay for hours worked over 40 hours in a workweek.  29 U.S.C. § 207(a)(1).  Under the FLSA, the regular rate is defined as "all remuneration for employment paid to, or on behalf of, the employee…."  29 U.S.C. § 207(e). While there are several limited exceptions to this rule, none of those exceptions apply to commissions and nondiscretionary bonuses, and therefore, do not apply in this case. Commissions are wages and count as compensable remuneration for purposes of calculating an employer's regular rate.  29 C.F.R. § 778.117.  In its entirety, the regulation reads:

> Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and **must be included in the regular rate.  This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission.**  It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval.  The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate.

(emphasis added).

The Fifth Circuit has determined that the failure to include commissions in the calculation of overtime is "in violation of the department regulations defining 'regular' and

overtime pay." *Donovan v. Grantham*, 690 F.2d 453, 457 (5th Cir. 1982). Other courts have also reached the same conclusion. *Solis v. Tally Young Cosmetics, LLC*, No. 09-CV-4804, 2011 WL 1240341, at *8 (E.D.N.Y. Mar. 4, 2011); *Kaiser v. At The Beach, Inc*., No. 08-CV-586-TCK-FHM, 2010 WL 5114729, at *16 (N.D. Okla. Dec. 9, 2010) ("[t]here is no question that commissions . . . must be included when deriving a 'regular rate' for purposes of calculating the amount of overtime due, in the event that FLSA liability is established"); *Power v. Centennial Communications Corp*., 679 F. Supp. 2d 918, 921 (N.D. Ind. 2009) ("[s]ince commissions are to be included in her regular rate, 29 C.F.R. § 778.117, and overtime"); *Haynes v. The Singer Co., Inc*., TCA 79-0892, 1981 WL 2344, at *6 (N.D. Fla. June 19, 1981) ("commissions are considered payments for hours worked and must be included in the regular rate of pay").

Collective actions under the FLSA are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding "common issues of law and fact arising from the same alleged . . . activity." *Ryan v. Staff Care, Inc*., 497 F. Supp. 2d 820, 823 (N.D. Tex. 2007) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)); *see also, Roussel v. Brinker Intern., Inc*., No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Tex. July 9, 2008) (stating the remedial nature of the FLSA and § 216 "militate[s] strongly in favor of allowing cases to proceed collectively.").

As set out below, the standard for granting conditional certification of a FLSA case is a lenient one, and Plaintiffs more than satisfy that lenient standard.

### A. FLSA Collective Actions Are Certified Under A Lenient Standard.

The FLSA requires covered employers to pay non-exempt employees for hours they have worked in excess of defined maximum hours. 29 U.S.C. § 207(a). It also creates a cause of

action for employees against employers who have violated the overtime compensation requirements:

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

"A representative action brought pursuant to this provision follows an 'opt-in' rather than an 'opt-out' procedure. *Villatoro*, 286 F. Supp. 2d at 811 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995)). District courts have discretion in deciding whether and how to award "timely, accurate, and informative" notice to prospective plaintiffs. *See Hoffmann-La Roche Inc.*, 493 U.S. at 172. FLSA collective actions "are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding common issues of law and fact arising from the same alleged . . . activity." *Ryan*, 497 F. Supp. 2d at 823 (citing *Hoffman-La Roche, Inc.*, 493 U.S. at 170).

Courts presently follow two different approaches in determining whether to authorize notice to employees of their right to join a collective action suit under FLSA Section 216(b). *See Ryan*, 497 F. Supp. 2d at 823. The first approach was developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and involves a two-step process to determine whether employees are similarly situated. *See Mooney*, 54 F.3d at 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91. The second approach follows *Shusan v. Univ. of Colorado*, 132 F.R.D. 263 (D. Colo. 1990), and treats collective action authorization as coextensive with Rule 23 class certification. *See Ryan*, 497 F. Supp. 2d at 824.

The Fifth Circuit has not yet "ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action." *Acevedo v. Allsup's Convenience Stores Inc.*, 600 F.3d 516, 518-19 (5th Cir. 2010). Despite this uncertainty, federal courts in the Fifth Circuit follow the *Lusardi* approach rather than the *Shushan* approach. *See e.g., Marshall v. EyeMasters of Texas, LTD.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011); *Clark v. City of Fort Worth*, No. 4:10-CV-519-A, 2011 WL 121896, at *2 (N.D. Tex. Jan. 11, 2011); *Ryan*, 497 F. Supp. 2d at 823; *Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-CV-0776-D, 2004 WL 2293842, at *1 (N.D. Tex. Oct. 7, 2004); *Tolentino*, 716 F.Supp.2d at 646, *Maynor v. Dow Chem. Co.*, Civil Action No. G-07-0504, 2008 WL 2220394, at *4 (S.D. Tex. May 28, 2008); *Villatoro*, 286 F. Supp. 2d at 810. This is consistent with the Fifth Circuit's conclusion in *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975) that "[t]here is a fundamental, irreconcilable difference between the class action described by [Federal Rule of Civil Procedure] 23 and that provided for by FLSA § 16(b)," namely the "opt out" procedure for class members under Rule 23 as contrasted with the opt in" procedure under Section 216(b). 513 F.2d 286, 288 (5th Cir. 1975); *see also Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The statutory framework of enforcement procedures under the FLSA and those of Title VII are crucially different, but this difference highlights even more why Rule 23 is not needed in FLSA suits. The FLSA procedure, in effect, constitutes a congressionally developed alternative to F.R.Civ. P. 23 procedures."). The Fifth Circuit has referred to the two-step process as the typical manner in which collective actions proceed. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008). According, this Court should use the *Lusardi* approach.

The first step of the *Lusardi* analysis is the "notice stage."  *See Mooney*, 54 F.3d at 1214. During the notice stage, the court "makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members."  *Id*.  Because the court has minimal evidence, this determination is made using a fairly lenient standard and typically results in 'conditional certification' of a representative class.  *Id*.  If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in.  *Id.* at 1214.  At this stage, courts generally "require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan infected by discrimination."  *Id*. at n.8. In making this determination, courts have considered such factors as "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted."  *Songer v. Dillon Resources, Inc*., 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008).

Generally, a plaintiff must show that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant aspects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."  *Morales v. Than Hung Corp*., Civil Action No. 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009).  *See also, Mahoney v. Farmers Ins. Exch.*, No. 4:09-cv-2327, 2011 WL 4458513, at *3 (S.D. Tex. Sep. 23, 2011) (reciting same three factors). This standard is "less stringent" than the Rule 23 class action requirements.  *See Ryan*, 497 F. Supp. 2d at 825 (citing *Grayson v. K-Mart Corp*., 79 F.3d 1086, 1096 (11th Cir. 1996)); *Cantu v. Vitol, Inc*., Civil Action No. H-09-0576, 2009 WL 5195918, at *3 (S.D. Tex. Dec. 21, 2009); *Prater v. Commerce Equities Mgmt. Co*., No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex.

11

Nov. 19, 2007) (citing cases); *Simmons v. T-Mobile USA, Inc*., No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007).

A court may deny conditional certification and notice "only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.   However, the court need not find uniformity in each and every aspect of employment to determine [that] a class of employees is similarly situated.   The remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively."   *See also*, *Ryan*, 497 F. Supp. 2d at 823.   If the court conditionally certifies the class during the notice stage, the action "proceeds as a representative action throughout discovery."   *See Mooney*, 54 F.3d at 1214.

*Lusardi's* second step is triggered when a defendant files a motion for decertification, after completion of discovery.   *Id.*   "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.   If the claimants are similarly situated, the district court allows the representative action to proceed to trial.   If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.   The class representatives – *i.e*., the original plaintiffs – proceed to trial on their individual claims.   *Id.*   Notification to prospective claimants issues when a court conditionally certifies the case as a collective action suit under Section 216(b), and the court "may exercise its discretion in defining the class of plaintiffs who will receive notice and how they will be notified."   *Id.*

"Neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making creditability determinations."   *McKnight v. D Houston, Inc*., 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (citing *Bouaphakeo v. Tyson Foods,*

*Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008) ("[W]hether at the first or second step in the § 216(b) collective action certification process, plaintiffs need not prove the merits of their claim. That is, plaintiffs do not have to show that the employer actually violated the FLSA."); *Lynch v. United Servcs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make creditability determinations."); *Barrus v. Dick's Sporting Goods, Inc.*, No. 05-CV-6253, 2006 WL 3373117, at *4 (W.D.N.Y. Nov. 3, 2006); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated."); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("[T]he Court need not evaluate the merits of plaintiffs' case in order to determine that a definable group of similarly situated plaintiffs can exist here."); *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 680 (D. Colo. 1997) ("[W]hether plaintiffs can meet their burden in the liability phase . . . is irrelevant to the question of § 216(b) certification.").

**B. Plaintiffs More Than Satisfy the Lenient Legal Standard for Conditional Certification of a FLSA Collective Action.**

This Court must determine whether Plaintiffs have satisfied their burden to demonstrate that conditional certification is proper.  In the notice stage, a court will customarily make a decision "based only on the pleadings and any affidavits which have been submitted."  *Mooney*, 54 F.3d at 1213-14.  To facilitate the analysis, the Court evaluates the request for conditional certification in light of the three factors described above.  *See Mahoney*, 2011 WL 4458513, at *3, *Morales*, 2009 WL 2524601, at *2.  As set forth below, Plaintiffs easily satisfy the lenient standard for conditional certification.

**1. First, There Is A Reasonable Basis for Crediting the Assertion That Aggrieved Individuals Exist.**

To satisfy this requirement, Plaintiffs "need only show that it reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan. *Villarreal*, 751 F. Supp. 2d at 916-17. Plaintiffs easily do so.

In this case, Plaintiffs have stated a cognizable claim under Section 207 of the FLSA, and Plaintiffs have provided declarations that describe the facts that: (1) Gold's Gyms excluded Fitness Consultants' commissions and bonuses from their overtime pay; and (2) Fitness Consultants worked off-the-clock hours in excess of 40 hours in a workweek but did not receive compensation for all of those hours that they actually worked for Gold's Gym. *See* EXHIBITS 6.1-6.10. Declarations such as these "are ideal for analysis of whether 'the putative class members were together the victims of a single decision, policy, or plan.'" *Morales*, 2009 WL 2524601, at *3. Declarations like these "establish that the potential class members had (or have) the same job requirements and pay provisions as the named Plaintiffs." *Ryan*, 497 F. Supp. 2d at 825. In light of these declarations, the Court may easily conclude that Plaintiffs have shown that it is reasonable to believe that there are other aggrieved employees. *See, e.g., Prater v. Commerce Equities Mgmt. Co., Inc.*, Civil Action No. H-07-2349, 2007 WL 4146714, at *5 (S.D. Tex. 2007) (reviewing allegations and affidavits in assessing first factor and certifying a class); *Davis*, 2012 WL 163941, at *6 (relying on similar evidence to conclude this requirement was satisfied); *Villarreal*, 751 F. Supp. 2d at 916-18 (relying on similar affidavits to conclude that the plaintiffs had fulfilled this requirement). Finally, the fact that numerous other Fitness Consultants have joined this lawsuit since it was filed proves beyond doubt that, in fact, there are other aggrieved persons.

## 2. Second, Those Other Aggrieved Individuals Are Similarly Situated To The Plaintiffs in Relevant Respects Given the Claims Asserted.

The potential class plaintiffs are considered "similarly situated" to the named plaintiffs if they are "'similarly situated' with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar. As Judge Lee Rosenthal stated, "[a] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff and not from any generally applicable rule, policy, or practice." *McKnight*, 756 F. Supp. 2d at 801 (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)); *see also Tolentino*, 716 F. Supp. 2d at 649-50..

Plaintiffs easily satisfy this test. Gold's Gym acknowledges that all Fitness Consultants were subject to the same Job Description, and were paid pursuant to the same compensation plan. EXHIBIT 3, GOLD'S CORPORATE REPRESENTATIVE DEPOSITION, 83:01-07; 84:07-11, 94:17-22, 101:01-22, 179:21—180:7; EXHIBIT 5, FITNESS CONSULTANT JOB DESCRIPTION. Moreover, Gold's Gym acknowledges that, until January 2013, it did not include commissions or bonuses in any of its Fitness Consultants' overtime pay. EXHIBIT 3, GOLD'S CORP REP. COPELAND DEP, 180:8—181:15. Moreover, eleven sales associates across different gyms in different geographical regions have testified that Gold's Gym does not compensate sales associates for all hours worked, and has a pattern of falsifying time records to erroneously deflate sales associates' hours. EXHIBITS 6.1-6.10, DECLARATIONS OF PLAINTIFFS AND OPT-INS; EXHIBIT 7, DECLARATION OF ADRIAN RICHARDSON; EXHIBIT 4, GRECO DEP., 49:17—50:22, 53:1-16, 53:25—54:8, 63:06—64:01. According to these sales associates, the interplay of Gold's Gym's policies essentially require that they work off-the-clock. EXHIBITS 6.1-6.10, DECLARATIONS OF PLAINTIFFS AND OPT-INS; EXHIBIT 7, DECLARATION OF ADRIAN RICHARDSON.

When Gold's Gym learns that its managers are falsifying sales associates' time records, it does not even discipline the Managers in writing (though, it does discipline sales associates if they work overtime).   EXHIBIT 4, GRECO DEPOSITION, 49:17—50:22, 53:1-16, 53:25—54:8, 63:06—64:01;  EXHIBIT 14, LUKE ROOD DISCIPLINARY MEMO FOR WORKING OVERTIME.  As a result, Plaintiffs were not compensated for all hours suffered or permitted to work by Gold's Gym.   Furthermore, none of the Plaintiffs or putative class members were paid correctly-calculated overtime when they were permitted to record more than forty hours a week.  EXHIBIT 3, GOLD'S CORP REP. COPELAND DEP., 180:8—181:15.   Rather, Gold's Gym improperly calculated Fitness Consultants' overtime pay by excluding their commissions and bonuses. EXHIBIT 3, GOLD'S CORP REP. COPELAND DEP., 180:8—181:15.

The Fitness Consultants thus are a cohesive and homogenous group that fit perfectly within the letter and spirit of the FLSA collective action.  *See Dryer v. Baker Hughes Oilfield Operations, Inc.*, Civil Action No. H-08-1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008); *Johnson v. Big Lots Stores, Inc.*, Civil Action Nos. 04-3201, 05-6627, 2007 WL 5200224, at *9 (E.D. La. Aug. 21, 2007).  It is well settled that, at this "fairly lenient" notice stage of the proceedings, Plaintiffs' declarations more than suffice as evidence that other employees are "similarly situated."  *Mooney*, 54 F.3d at 1214; *Johnson v. TGF Precision Haircutters*, *Inc*., 319 F. Supp. 2d 753, 754-55 (S.D. Tex. 2004).  Moreover, Gold's Gym admits that the putative class members are similarly situated with regard to the Rate Claim.

### 3.  Third, It is Reasonable To Believe That Other Person Want to Opt Into This Lawsuit.

Plaintiffs have no problem meeting this requirement.  *See, e.g., Davis*, 2012 WL 163941 at *10 (finding this requirement was satisfied based on similar proof); *McKnight*, 756 F. Supp. 2d at 805 (finding plaintiffs fulfilled this element mainly because "[t]his litigation has already

16

attracted six plaintiffs"); *Prater*, 2007 WL 4146714, at *8 (three plaintiffs' presence in lawsuit showed sufficient interest in the litigation to satisfy this requirement, even in the absence of affidavits).  As of the time that this Motion was filed with the Court, twenty-two individuals have filed Consents to Join this action, consenting to be party plaintiffs in this lawsuit.  (*See* DKT. NOS. 6, 22, 23, 24, 29, 30, 31, 33, 34, 37, 39, 47, 57, 58, 62, 70, 71, 73, 75, 76, 77).  These opt-in Plaintiffs constitute a small number of the 800-plus current and former Fitness Consultants that have worked for Gold's Gym during the preceding three years.  The number of opt-in Plaintiffs will no doubt increase if the Court grants this motion and notices are allowed to be sent to all eligible Fitness Consultants.

In conclusion, all three factors strongly militate in favor of granting Plaintiffs' motion, conditionally certifying this action, and authorizing Plaintiffs to issue notice of their opt-in rights to the other similarly-situated Fitness Consultants, so they too may claim the unpaid overtime that Gold's owes them.

### C.  The Proposed Notice is Proper.

A proposed notice is provided with this motion as Exhibit 1 that complies with the rules applicable to notices in these types of cases, and is fair to both Plaintiffs and Gold's Gym.

### IV. CONCLUSION

Plaintiffs respectfully pray that the Court grant their motion to conditionally certify a collective action and to issue opt-in notices and consent forms to all persons who have performed work for Gold's Gym as Fitness Consultants during the three years preceding the date this action was filed.

Plaintiffs also seek an order from the Court that Gold's Gym produce to Plaintiffs' counsel in a usable electronic format no later than seven days from the entry of the Court's order,

the names, last known personal and residential addresses, last known residential and cell phone numbers, personal and work e-mail addresses, last four digits of their Social Security Number, and dates of work of all persons who performed work for Gold's Gym as Fitness Consultants during the three years preceding the date the Court grants Plaintiffs' Motion.  Such information should be verified as complete and accurate by Gold's Gym.  *See Davis*, 2012 WL 163941, *11 (requiring production of telephone numbers and other information); *Meyers*, 2010 2710676, at *4 (requiring production of last four digits of Social Security Numbers); *Tolentino*, 716 F.Supp.2d at 655-56 (ordering production of names, addresses, phone numbers, and e-mail addresses); *Beall v. Tyler Techs., Inc.*, No. Civ. A 2:08-cv-422, 2009 WL 1766141, at *4 (E.D. Tex. Jun 23, 2009) (requiring production of same types of information, including Social Security Numbers); *Eggleston v. Sawyer Sports Bar, Inc.*, Civil Action No. 4:09-3529, 2010 WL 2639897 (S.D. Tex. June 28, 2010) (requiring production of e-mail addresses).

Plaintiffs have provided the Court with a proposed Order granting the relief requested.

Finally, Plaintiffs pray for all other relief to which they are just entitled.

Respectfully submitted,

/s/ Lawrence Morales II
Lawrence Morales II
State Bar No. 24051077
**THE MORALES FIRM, P.C.**
115 E. Travis, Suite 1530
San Antonio, Texas 78205
Telephone No. (210) 225-0811
Facsimile No. (210) 225-0821
lawrence@themoralesfirm.com

***ATTORNEY FOR PLAINTIFFS***

18

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Gold's Gym's counsel Michael Gray concerning the contents of this Motion. Mr. Gray indicated that the Gold's Gym defendants did not oppose this Motion regarding Plaintiffs' Rate Claim, but did oppose the Motion with regard to Plaintiff's Off-The-Clock Claim.

/s/ Lawrence Morales II_____
Lawrence Morales II

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2013, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to admitted counsel of record:

Richard G. Garza
Melodee L. Gruber
Jackson Walker, LLP
112 East Pecan Street, Suite 2400
San Antonio, Texas 78205

Anthony J. Oncidi
Proskauer Rose LLP
2049 Century Park East
32nd Floor
Los Angeles, CA 90067

Christopher L. Williams
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130

Brian M. Jorgensen
Natalie Oehninger
Mark J. Tindall
Jones Day
2727 North Harwood Street
Dallas, Texas 75201

Michael J. Gray
Jones Day
77 West Wacker
Chicago, IL 60601-1692

/s/ Lawrence Morales II_____
Lawrence Morales II