# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| PAMELA R. LAY, BRIAN DUCOTE, RYAN JETER, ALYSSA JAYNES, MARCUS DEVANE, AND SIMON SUAREZ, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CV. NO. SA-12-CV-754-DAE |
| vs. | ) ) | |
| GOLD'S GYM INTERNATIONAL, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| LAWRENCE J. LANE, MACARIO ESCAMILLA, III, and SIMON SUAREZ, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CV. NO. SA-12-CV-930-DAE |
| vs. | ) ) | |
| GOLD'S GYM INTERNATIONAL, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

1

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO
<u>CONDITIONALLY CERTIFY COLLECTIVE ACTIONS</u>

On September 23, 2013, the Court heard the Fitness Consultant

Plaintiffs' Motion to Conditionally Certify a Collective Action and to Issue Notice

in the <u>Lay</u> action (No. 5:12-cv-00754) and the Sales Manager Plaintiffs' Motion to

Conditionally Certify a Collective Action and to Issue Notice in the <u>Lane</u> action

(No. 5:12-cv-00930).[1]  (<u>Lay</u> Dkt. # 92; <u>Lane</u> Dkt. # 34.)  After reviewing the

motions and the supporting and opposing memoranda, the Court **GRANTS IN**

**PART AND DENIES IN PART** the motions to conditionally certify collective

actions.

<u>BACKGROUND</u>

I.     <u>Procedural Background</u>

Plaintiffs in the <u>Lay</u> and <u>Lane</u> actions ask the Court to conditionally

certify a nationwide class of more than 800 Fitness Consultants and 120 Sales

Managers.  The <u>Lay</u> Plaintiffs[2] are former Fitness Consultants of Gold's Gym[3] and

---

[1] On March 1, 2013, the Court ordered that the <u>Lay</u> and <u>Lane</u> actions be
consolidated for the purposes of discovery and all pretrial matters.  (<u>Lay</u> Dkt.
# 51.)

[2] Named plaintiffs in the <u>Lay</u> action are Pamela R. Lay, Brian Ducote, Ryan
Jeter, Alyssa Jaynes, Marcus Devane, and Simon Suarez.  (<u>Lay</u> Dkt. # 84.)

[3] "Gold's Gym" or "Defendants" refers to Defendants Gold's Gym
International, Inc., Gold's Texas Holdings Group, Inc., Gold's Holding Corp., GGI

the <u>Lane</u> Plaintiffs[4] are former Sales Managers of Gold's Gym.  In both actions,

plaintiffs bring two separate claims under the Fair Labor Standards Act ("FLSA"),

29 U.S.C. § 201 <u>et seq.</u>, for which they seek damages.  (<u>See</u> Lay Dkt. # 84; <u>Lane</u>

Dkt. # 31.)  First, they allege that Gold's Gym violated the FLSA by failing to

include commissions and bonuses in their regular rates of pay for purposes of

calculating overtime compensation (the "Rate Claim").  Second, they aver that

Gold's Gym did not compensate them for all overtime hours worked (the

"Off-The-Clock Claim").  Gold's Gym does not oppose the <u>Lay</u> and <u>Lane</u>

Plaintiffs' motions to conditionally certify collective actions with respect to the

<u>Rate Claims</u>.  However, Gold's Gym opposes the conditional certification of

classes with respect to the <u>Off-The-Clock Claims</u>.

II.    <u>Gold's Gym and the Spectrum Acquisition</u>

Collectively, Defendants own and operate 74 full-service,

mixed-gender health and fitness clubs nationwide.  (Lay Dkt. # 100-1 ("Copeland

Dec.") ¶ 6.)  Forty-one are owned and operated by Gold's Texas Holdings Group,

---

Holdings, LLC, GBG, Inc., Gold's Alabama, LLC, Gold's Gym Rockies, LLC, Gold's Gym Oklahoma, LLC, and Gold's St. Louis, LLC.  The defendants are the same in the <u>Lay</u> and <u>Lane</u> actions except that Defendant GGI Holdings, LLC is not a defendant in the <u>Lay</u> action.

[4]  Named plaintiffs in the <u>Lane</u> action are Lawrence J. Lane, Macario Escamilla III, and Simon Suarez.  (<u>Lane</u> Dkt. # 31.)

Inc. ("GTH").  (Id. ¶ 5.)  GTH divides its operations into three regions—Austin,

Dallas, and South Texas—each of which is managed by a Division Vice President

("DVP").  (Id.)  The remaining gyms are owned and operated by different

corporate entities, each of which is managed by a DVP, a District Manager, or

both.  (Id.)  Gold's Alabama, LLC operates four gyms; GBG, Inc. operates one

gym; Gold's Gym Rockies, LLC operates one gym; Gold's Holding Corporation

operates sixteen gyms; Gold's Oklahoma, LLC operates four gyms; and Gold's St.

Louis, LLC operates seven gyms.  (Id.)

   The overwhelming majority of named and "opt-in" plaintiffs in the

Lay and Lane actions are former employees of gyms owned by Spectrum Clubs,

Inc. ("Spectrum") located in San Antonio, Texas.  GTH acquired Spectrum's

eleven San Antonio-area gyms through an asset purchase agreement in March

2012.  (Id. ¶ 7.)  Following the acquisition, GTH hired many of Spectrum's former

employees to continue working at the gyms, including several to work as Fitness

Consultants and Sales Managers.  (Id.)  Gold's Gym also reclassified the Fitness

Consultants and Sales Managers as non-exempt employees under the FLSA.  (Id.)

Accordingly, they were paid an hourly rate plus commissions and—in the case of

Sales Managers—bonuses.  (Id.)

III. Official Timekeeping Policies of Gold's Gym

There is no dispute that Gold's Gym maintains official, written policies requiring non-exempt employees—including Sales Managers and Fitness Consultants—to record and be paid for all time worked.  (Copeland Dec. ¶¶ 8–9.)  Additionally, the policies expressly prohibit off-the-clock work.  (Id.)  For example, Gold's Gym's "Attendance, Timekeeping, and Work Schedules Policy" provides: "You may not be asked by any Gold's Gym Manager to change the time you worked, to work time off the clock, or to volunteer for unpaid work.  If this occurs, please contact your Regional HR Manager immediately."  (Id. Ex. A.)  This policy against off-the-clock work is further emphasized in a Human Resources memorandum periodically distributed to gym-level employees, which informs employees that "[u]nder no circumstances is a non-exempt (hourly) Associate ever permitted to work 'off the clock.'"  (Id. Ex. B.)  Gold's Gym also maintains an "Employee Conduct and Work Rules Policy" that further prohibits "falsification of, or failure to keep, accurate timekeeping or other business records."  (Id. Ex. C.) While Gold's Gym requires employees to receive approval before they work overtime, it maintains a policy that employees "must be paid for ALL hours worked whether scheduled or unscheduled," even if overtime "was not pre-approved by management."  (Id. Ex. D.)

Gold's Gym trains managers and non-exempt employees in its

time-keeping and overtime policies.  (Id. ¶¶ 9–10.)  Several plaintiffs in the Lay

and Lane actions have admitted they knew that Gold's Gym had official policies

prohibiting off-the-clock work.  (Lay Dkt. # 100-2 ("Lane Dep.") at 73:21–23; Lay

Dkt. # 100-3 ("Lay Dep.") at 107:1–25; Lay Dkt. # 100-4  ("Ducote Dep.") at

108:10–110:11; Lay Dkt. # 100-5 ("Devane Dep.") at 121:2–122:7.)  Gold's Gym

also employs Human Resources personnel to investigate overtime complaints and

to review Punch Correction forms for improprieties.  (Copeland Dec. ¶ 10.)

General Managers are further barred from accessing the timekeeping system.  (Id.)

Additionally, Gold's Gym has provided evidence that, in the past, it has disciplined

associates and managers who perform, or permit others to engage in, off-the-clock

work.  (Id.; Lay Dkt. # 100-6 ("Reed-Grant Dec.")  ¶ 11.)

DISCUSSION

I.     Legal Standard for Class Certification Under the FLSA

          Section 207(a) of the FLSA requires covered employers to

compensate non-exempt employees at overtime rates for all time worked in excess

of statutorily-defined maximum hours.  29 U.S.C. § 207(a).  Section 216(b) creates

a cause of action for employees against employers violating the overtime

compensation requirements.  29 U.S.C. § 216(b).  That section also authorizes an

employee to bring a "collective action" against an employer on behalf of himself

6

and "other employees similarly situated."  Id.

The law favors such collective actions under the FLSA because they promote the "efficient resolution in one proceeding of common issues of law and fact" and help plaintiffs "lower individual costs to vindicate rights by the pooling of resources."  Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). Unlike a Rule 23 class action, however, plaintiffs in a collective action under the FLSA must affirmatively opt in to be covered by the suit.  Compare 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party . . . .") with Fed. R. Civ. P. 23(c)(2)(B) (requiring that the notice to class members include a statement "that the court will exclude from the class any member who requests exclusion," providing when and how members may elect to be excluded).  Because the benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action," the FLSA grants courts "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."  Hoffmann-LaRoche, 493 U.S. at 170.

Although the Fifth Circuit has declined to adopt a specific test to

determine when a court should certify a class or grant notice in a § 216(b) action,

see Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 518–19 (5th Cir.

2010), "most federal courts . . . have adopted the Lusardi [v. Xerox Corp., 118

F.R.D. 351 (D.N.J. 1987)] test when deciding these issues." Pedigo v. 3003 S.

Lamar, LLP, 666 F. Supp. 2d 693, 696 (W.D. Tex. 2009) (citations omitted); see

also Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 (5th Cir. 1995), overruled

on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 90–91 (2003);

Clarke v. Convergys Customer Mgmt. Grp., Inc., 370 F. Supp. 2d 601, 605 (S.D.

Tex. 2005) ("[I]t is clear that the [Lusardi] two-step approach is the prevailing test

among the federal courts") (internal quotation marks omitted).

      Under Lusardi, the trial court approaches the "similarly situated"

inquiry in two stages. Mooney, 54 F.3d at 1213. The first is the "notice stage"; the

second is the "decertification stage." See id. at 1213–14. "At the notice stage, the

district court makes a decision—usually based only on the pleadings and any

affidavits which have been submitted—whether notice of the action should be

given to potential [opt-in] class members." Id. This determination is "made using

a fairly lenient standard, and typically results in a 'conditional certification' of a

representative class." Pedigo, 666 F. Supp. 2d at 697 (citing Mooney, 54 F.3d at

1214); see also Ryan v. Staff Care, Inc., 497 F. Supp. 2d 820, 824 (N.D. Tex.

2007) ("At the notice stage, the ["similarity"] inquiry by the court is considerably less rigorous than the court's initial inquiry under the Rule 23 approach.").

The plaintiff bears the burden of making the preliminary factual showing that a similarly situated group of potential plaintiffs exists.  Tice v. AOC Senior Home Health Corp., 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011); see also England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 508 (M.D. La. 2005) (explaining plaintiffs must demonstrate "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].").  The class representatives and potential opt-in class members "must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions."  Ryan, 497 F. Supp. 2d at 824–25.  "The positions need not be identical"—just "similar."  Id. at 825.  Broadly speaking, "[a] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."  Id.

Once conditional certification is granted, "putative class members are given notice and the opportunity to 'opt-in.'"  Mooney, 54 F.3d at 1214.  The case then "proceeds through discovery as a representative action."  Pedigo, 666 F. Supp. 2d at 697 (internal quotation marks omitted).  Upon completion of discovery and

after notice has issued, the defendant may, if appropriate, file a motion for decertification, initiating the second stage of the <u>Lusardi</u> analysis. <u>Id.</u> In this second stage, the Court must re-examine the class and—in light of the additional information produced through discovery—make another factual determination under a more stringent standard as to whether the putative class members are, in fact, similarly situated. <u>Id.</u> If the class is similarly situated, the representative action may proceed; if not, the Court decertifies the class, dismisses the opt-in plaintiffs without prejudice, and allows the class representatives to proceed on their individual claims. <u>Mooney</u>, 54 F.3d at 1214.

II.   <u>Analysis</u>

At present, this action is in the first stage of the <u>Lusardi</u> analysis— namely, the "notice" stage. Accordingly, the <u>Lay</u> and <u>Lane</u> Plaintiffs bear the burden of making a preliminary factual showing that a "similarly situated" group of potential plaintiffs exists. <u>See</u> <u>Tice</u>, 826 F. Supp. 2d at 995. Gold's Gym argues that the <u>Lay</u> and <u>Lane</u> Plaintiffs have not met this burden with respect to their Off-The-Clock Claims. For the reasons given below, the Court agrees that Plaintiffs have not made a sufficient showing to permit conditional certification of a <u>national</u> class of Fitness Consultants and Sales Managers, but finds that they have met the burden of demonstrating a <u>regional</u> class should be so certified.

A.  <u>Whether There Exists a Common Policy or Practice</u>

Even the lenient standard in the notice stage of conditional certification requires "substantial allegations" that potential class members "were together the victims of a single decision, policy, or plan." <u>McKnight v. D. Houston, Inc.</u>, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010) (citation omitted).  An employer's formal, written policies prohibiting off-the-clock work are insufficient to defeat conditional certification where employees show that the employer instituted a "common or uniform practice . . . to not follow its formal, written policy."  <u>See</u> <u>Pacheco v. Boar's Head Provisions Co., Inc.</u>, 671 F. Supp. 2d 957, 962 (W.D. Mich. 2009).  In other words, "it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations."  <u>Winfield v. Citibank, N.A.</u>, 843 F. Supp. 2d 397, 405 (S.D.N.Y. 2012).

In this case, there is no dispute that Gold's Gym had written policies in place prohibiting off-the-clock work and requiring employees to record all time worked.  However, the <u>Lay</u> and <u>Lane</u> Plaintiffs argue that Gold's Gym had a <u>de facto</u> policy of encouraging and allowing Sales Managers and Fitness Consultants to work overtime without compensation.  They further allege that Gold's Gym had a policy of falsifying time cards.

11

At present, the vast majority of named and opt-in plaintiffs are former employees of San Antonio-area gyms that once belonged to Spectrum.  Many of these plaintiffs have submitted the declarations[5] that they were "encouraged" to work-off-the clock and that their General Managers had them sign blank Punch Correction forms to alter the recorded number of hours worked.  (See, e.g., Lay Dkt. # 92-07 ("Ducote Dec.") ¶¶ 5–7; Lane Dkt. # 34-1 ("Lane Dec.") ¶¶ 5–6.)  Several maintain that although they complained to their supervisors that they were working overtime without compensation, Gold's Gym took no corrective action to see that they were compensated.  (See, e.g., Lane Dec. ¶¶ 5–6.)  Around ten different General Managers are named in the declarations as permitting overtime work without compensation.  Additionally, the declaration of Erik Weik—the former General Manager of a San Antonio-area Gold's Gym—provides that the Regional Manager of GTH's "South Texas" division, Rocco Greco, set monthly sales goals for the region that required high levels of productivity from Sales Managers and Fitness Consultants, while also strongly discouraging overtime work.  (Lane Dkt. # 34-1 ("Weik Dec.") ¶ 4.)  Weik explains that this caused employees, who were allegedly fearful of being terminated if they failed to meet

---

[5]  One declaration from a Dallas employee of Gold's Gym was stricken from the record by order of the Court.  (Lay Dkt. # 105, Lane Dkt. # 48.)

their sales quotas, to work overtime without compensation.  (Id.)  Further, he

maintains that "most" General Managers were aware of this practice.  (Id. ¶ 6.)  As

a whole, this evidence points to a regional de facto policy requiring off-the-clock

work in GTH's South Texas division.

However, despite months of preliminary discovery, there is no

evidence to suggest that Gold's Gym had a national de facto policy of requiring

off-the-clock work.  Plaintiffs rely solely upon job descriptions and compensation

plans applicable to Sales Managers and Fitness Consultants in the employ of

Defendants across the country to infer a national policy to require off-the-clock

work existed.  However, the various job descriptions do not state that job duties are

to be performed without compensation or that employees will not be paid for work

in excess of forty hours a week.  See Richardson v. Wells Fargo Bank, N.A., No.

4:11–cv–00738, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012) ("Plaintiffs

counter that Wells Fargo's job descriptions and postings are evidence of a national

policy or plan . . . . Nowhere do these documents state that these duties are to be

performed without compensation if done outside an employee's regular, assigned

shift hours.").  The fact that managers within one specific region allegedly required

or condoned off-the-clock work, without further evidence, is insufficient to warrant

certification of the national class that the Lay and Lane Plaintiffs request.

Nevertheless, as described above, Plaintiffs have made a sufficient showing that a regional policy or practice of not compensating Sales Managers and Fitness Consultants for all time worked existed in the South Texas division. Although Gold's Gym presents evidence that it disciplined and admonished certain employees discovered to be working off-the-clock, this is not sufficient to defeat the preliminary showing made by the Lay and Lane Plaintiffs.  At the notice stage of conditional certification, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Brasfield v. Source Broadband Servs., LLC, 257 F.R.D. 641, 642 (W.D. Tenn. 2009); see also Barrus v. Dick's Sporting Goods, Inc., 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006) ("It is not the Court's role to resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations at the preliminary certification stage of an FLSA collective action."); Clarke v. Convergys Customer Mgmt. Grp., 370 F. Supp. 2d 601, 607 (S.D. Tex. 2005) (noting that fact issues raised by the defendant are "of the sort that are appropriate for consideration during the second-stage analysis, and not during the initial 'notice' stage").  Gold's Gym also presents evidence that not all of its General Managers in the South Texas division had knowledge of the alleged off-the-clock violations.  However, this is directly contradicted by the affidavits of numerous

14

plaintiffs, who maintain that they complained to their General Managers that they were working overtime hours without compensation and that those managers took no corrective action.  Again, at the notice stage, it is improper for the Court to weigh competing evidence.

Gold's Gym also points to evidence that it paid the <u>Lay</u> and <u>Lane</u> Plaintiffs for hundreds of hours of overtime work and argues this demonstrates that a <u>de facto</u> policy requiring off-the-clock work never existed.  However, "[t]he question for the Court is not whether Defendants paid <u>any</u> overtime to some of the Plaintiffs but whether they paid <u>all</u> overtime or had a policy of limiting the amount of overtime pay—through the explicit or implicit actions of their managers and supervisors—that [Plaintiffs] were entitled to receive."  <u>Amador v. Morgan Stanley & Co. LLC</u>, No. 11 Civ. 4326(RJS), 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013).  Thus, the fact that Gold's Gym paid a fairly significant sum in overtime wages to Sales Managers and Fitness Consultants is not dispositive at the conditional certification stage.

B.    <u>Whether the Job Duties of Former Spectrum Employees Were Unique</u>

Gold's Gym also argues that the <u>Lay</u> and <u>Lane</u> Plaintiffs—the majority of whom previously worked for Spectrum gyms before the acquisition of those facilities by Gold's Gym—had unique job duties during the ownership

transition.  As such, it contends that other Fitness Consultants and Sales Managers located across the county are not sufficiently "similarly situated" to Plaintiffs.

More specifically, Gold's Gym argues that former Spectrum employees used, among other things, different vocabulary to describe their work and different methods to track sales and "walk-ins" before, and immediately following, the acquisition.  (Lay Dkt. # 100 at 23.)  Former Spectrum employees also had to adapt to different technology after the transition.  However, these differences are not substantial enough to defeat conditional certification.  Gold's Gym International, Inc.—the entity overseeing Human Resources for all regional subsidiaries—maintained uniform job descriptions for Sales Managers and Fitness Consultants nationwide.  (Lane Dkt. # 34-3.)  Additionally, Gold's Gym concedes that Sales Managers and Fitness Consultants generally "sell[] gym memberships and training packages" and are paid "through commissions and bonuses."  (Lay Dkt. # 100 at 10.)  Thus, on a national basis, Sales Managers and Fitness Consultants appear to share the same general job duties.  Moreover, "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement."  Walker v. Honghua Am., LLC, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012) (quoting Tolentino v. C & J Spec–Rent Servs., Inc., 716 F. Supp. 2d 642, 651 (S.D. Tex. 2010)).

16

Gold's Gym also contends that "Plaintiffs' theory that sales goals dictated off-the-clock work" is untenable because each gym has different sales goals and different method for meeting these goals.  (Lay Dkt. # 100.)  Gold's Gym cites Carey v. 24 Hour Fitness USA, Inc., No. H–10–3009 (NFA), 2012 WL 4857562 (S.D. Tex. Oct. 11, 2012) in support of this proposition.  In Carey, the plaintiff sought conditional certification on his claim that 24 Hour Fitness failed to compensate Sales Counselors for all overtime hours worked.  Id. at *1–2.  Like the Lay and Lane Plaintiffs, the plaintiff claimed that 24 Hour Fitness imposed sales goals on employees that those employees could not meet without working overtime.  See id.  However, the court denied conditional certification because it found that "sales goals are imposed differently from club to club" and that only three putative class members submitted evidence and sought to join the lawsuit, despite its two-year pendency.  See id. at *2–3.

Here, Gold's Gym maintains that sales goals "differ from gym to gym, based on several factors, including local competition, improvements at the gym, the number of Gold's gyms in the area, customer traffic trends, and the gym's age." (Lay Dkt. # 100.)  However, Plaintiffs have presented sufficient evidence that, at least in the South Texas division, sales goals promulgated in some fashion by the Regional Manager, and enforced by at least ten General Managers, caused

17

Plaintiffs to work overtime hours without compensation.  As such, the <u>Lay</u> and

<u>Lane</u> Plaintiffs have sufficiently demonstrated that there potentially exist "similarly

situated" putative class members on a regional basis.

   However, Gold's Gym correctly argues that there is no evidence

before the Court regarding the sales goals and policies of facilities owned by

Gold's Gym outside this limited region.  Moreover, Gold's Gym has presented

evidence that it organizes its San Antonio-based gyms into a tiered structure that

differs from other areas of the country.  (Lay Dkt. # 100.)  San Antonio's top-tier

facilities consist of the eleven former Spectrum gyms, which have more amenities

and cater to a wealthier clientele.  (Shaffer Dec. ¶¶ 4, 5; Gochee Dec. ¶ 4;

Robinson Dec. ¶ 8; Jeter Dep. at 77:12–78:5.)  The tiered system means that,

unlike any other area in the country, Sales Managers and Fitness Consultants who

worked for former Spectrum gyms were expected to sell "upgrades" from one level

to a higher level and were compensated based on those "upgrades."  (<u>See</u> Jeter

Dep. at 79:11–81:12.)  However, while these distinctions weigh against the

creation of a <u>national</u> class, they continue to support the certification of a <u>regional</u>

class.

   Gold's Gym also points out that the transition in ownership caused

"disruption and discord" among former Spectrum employees.  (<u>Lay</u> Dkt. # 100.)

18

At Spectrum, Fitness Consultants and Sales Managers were classified as exempt from the FLSA's overtime provisions; they were paid a salary, were not required to record their time worked, and, according to their testimony, were free to manage their own schedule.  (Devane Dep. at 24:6–23, 56:21–23; Ducote Dep. at 20:1–5, 23:16–24:2; Escamilla Dep. at 42:7–20.)  After the acquisition, former Spectrum employees were reclassified as non-exempt workers and paid an hourly rate plus commissions and, in the case of Sales Managers, bonuses.  (Copeland Dec. ¶ 7.) Several former Spectrum employees found these changes unwelcome (see Ducote Dep. at 40:24, 85:18–19) and were concerned that their pay would decrease. (Devane Dep. at 47:5–18; Escamilla Dep. at 50:8–25; Ducote Dep. at 40:13–14, 54:12–16, 70:18–22.)

While these concerns were certainly unique to former Spectrum employees, their uniqueness is not sufficient to defeat certification of a regional class given the other evidence before the Court regarding the policies allegedly enacted by Regional Manager Rocco Greco and the less-than-exacting burden that plaintiffs carry at the notice stage of an FLSA collective action.

C.     Whether Damages Are Sufficiently Similar

Gold's Gym cites the Supreme Court's recent opinion in Comcast v. Behrend, 133 S. Ct. 1426 (2013) for the proposition that "courts must undertake a

rigorous analysis of class certification motions and, in particular, plaintiffs' ability to measure damages under a common classwide theory."  (Lay Dkt. # 100.)  In Comcast, the Supreme Court reviewed the certification of a putative class consisting of 2 million current and former Comcast subscribers who sought damages for alleged violations of federal antitrust laws.  133 S. Ct. at 1429–30, 1435.  The Supreme Court found certification improper under Rule 23 where plaintiffs fell "far short of establishing that damages are capable of measurement on a classwide basis," and "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."  See 133 S. Ct. at 1433.

Comcast is distinguishable from the instant case for several reasons. First, and most importantly, this is a collective action under 29 U.S.C. § 216(b), not a class action under Rule 23.  Rule 23 certification requirements do not apply to FLSA collective actions.  Richardson v. Wells Fargo Bank, N.A., No. 4:11-cv-00738, 2012 WL 334038, at *2 n.8 (citing LaChapelle v. Owens–Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975) (declining to apply Wal–Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011) to an FLSA collective action).

Second, at the notice stage of the proceedings, the relevant inquiry is whether there exist similarly situated potential plaintiffs.  Gold's Gym argues that, because the Lay and Lane Plaintiffs must offer evidence of the overtime hours that

each of them worked <u>individually</u>, they cannot "develop a common theory of damages." (Lay Dkt. # 100.) It points to the fact that some plaintiffs have testified that they can only speculate as to the number of overtime hours that they worked. (<u>See</u> Ducote Dep. at 142:1–19, 153:17–20; Escamilla Dep. at 115:3–6; Devane Dep. at 125:7–14, 126:6–25; Jeter Dep. at 109:24–110:18.) However, while damages may not be easily determinable in this case, the <u>Lay</u> and <u>Lane</u> Plaintiffs have sufficiently demonstrated that their alleged damages are the product of a common, <u>de facto</u> policy promulgated by Gold's Gym requiring off-the-clock work, at least at a regional level.

Gold's Gym also argues that certain plaintiffs and putative class members may be exempt from the FLSA's overtime requirements under the "commissioned retail salesperson" exemption set forth in 29 U.S.C. § 207(i). (<u>Lay</u> Dkt. # 100.) Under § 207(i), employees of retail and service establishments are exempt from overtime requirements if their regular rate of pay exceeds one and one-half times the minimum wage and if they earn more than half their pay from commissions. 29 U.S.C. § 207(i). Gold's Gym contends that this defense cannot be established "by common proof" because it requires "highly individualized" inquiries into each employee's earnings and employment history. (<u>See</u> <u>Lay</u> Dkt. # 100.) However, several courts have concluded that such issues are best

addressed in the latter stages of an FLSA collective action—typically, in the

decertification stage.  See, e.g., Johnson v. Wave Comm GR LLC, No. 6:10-CV-

346 , 2011 WL 10945630, at *9 (N.D.N.Y. Oct. 4, 2011) (deferring consideration

of the effect of § 207(i) defenses at the notice stage of FLSA conditional

certification); Jason v. Falcon Data Com, Inc., 09-CV-03990, 2011 WL 2837488,

at *6 (E.D.N.Y. July 18, 2011) (finding that § 207(i) defenses are "more

appropriately addressed at the decertification stage"); see also Beauperthuy v. 24

Hour Fitness USA, Inc., 772 F. Supp. 2d 1111, 1126–27 (N.D. Cal. Feb. 24, 2011)

(considering § 207(i) exemptions at the decertification stage of FLSA conditional

certification).  Accordingly, the Court defers consideration of the effect of potential

§ 207(i) exemptions at this stage of the proceedings, leaving open the possibility

that Gold's Gym may re-raise its concerns at the decertification phase.

   In sum, the Court finds that the Lay and Lane Plaintiffs have

presented sufficient evidence to warrant conditional certification of their Off-The-

Clock Claims with respect to a regional class consisting of those Fitness

Consultants and Sales Managers working in GTH's South Texas division.

However, they have not met the burden of conditional certification with respect to

a national class.

Insofar as Gold's Gym does not oppose the conditional certification of the <u>Lay</u> and <u>Lane</u> Plaintiffs' Rate Claims, the Court grants the motions for conditional certification.  There is no dispute that Gold's Gym maintains nationwide compensation policies designating Fitness Consultants and Sales Managers as non-exempt, hourly employees under the FLSA.  Until recently, Gold's Gym had a nationwide policy of excluding commissions and bonuses from the overtime pay of Fitness Consultants and Sales Managers.  Accordingly, certification of a <u>national</u> class with respect to the <u>Lay</u> and <u>Lane</u> Plaintiffs' Rate Claims is appropriate.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the motions to conditionally certify collective actions.  (<u>Lay</u> Dkt. # 92; <u>Lane</u> Dkt. # 34.)  The Court conditionally certifies a national class with respect to the <u>Lay</u> and <u>Lane</u> Plaintiffs' Rate Claims and a regional class with respect to the <u>Lay</u> and <u>Lane</u> Plaintiffs' Off-The-Clock Claims.

The Court **ORDERS** the parties to confer regarding the content of the notices to be sent to the conditionally certified classes.  The parties are further **ORDERED** to notify the Court within fourteen (14) days of the entry of this Order of any disputes regarding the content of the class notices.

IT IS SO ORDERED.

DATED: San Antonio, Texas, October 4, 2013.